No. 80-415

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

LAURA MAY BRUNTON KARTES,

Plaintiff and Respondent,

vs.

THEODORE C. KARTES,

Defendant and Appellant.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding

Counsel of Record:

For Appellant:

Moses Law Firm, Billings, Montana
Charles Moses argued, Billings, Montana

For Respondent:

Goetz and Madden, Bozeman, Montana
James Goetz argued, Bozeman, Montana

Submitted: September 22, 1981

Decided: NOV 20 1981

Filed: NOV 2 1981

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an action based on three alleged agreements, one written and two oral, between a husband and wife. The District Court found that the written agreement and a related oral agreement were enforceable against the husband by his wife; all claims relating to the third oral agreement were dismissed. Both parties appeal.

Laura May Brunton married Theodore Kartes on January 22, 1973. They entered into a prenuptial agreement which provided that the real and personal property of each would remain separate.

In 1974 Theodore Kartes brought suit against his two sisters for title to 320 acres of land in Gallatin County, Montana. He had hired an attorney who estimated that his fees for the action would range from $5,000 to $7,500.

Theodore and Laura Kartes discussed privately how they would finance the legal expenses. A handwritten agreement was executed by them on September 18, 1974, in which Laura Kartes agreed to pay the legal fees of Theodore Kartes' quiet title action and in exchange Theodore Kartes would give to Laura Kartes 10% of his 320 acres or the value thereof.

Theodore Kartes was successful in the quiet title action at the District Court level. Laura Kartes paid her husband's legal fees amounting to $8,627.86.

Theodore Kartes' sisters appealed the decision. Laura Kartes claims that at this time, July 20, 1976, Theodore Kartes agreed to convey an additional 10% of the 320 acres if she financed the appeal. Theodore Kartes denies that he made this oral agreement.

Theodore Kartes' quiet title action was successful on appeal and, again, Laura Kartes paid her husband's legal fees amounting to $7,049.79.

Theodore Kartes has taken no action to convey to Laura Kartes any portion of the 320 acres or any value thereof.

Laura Kartes claims that there was a third agreement between herself and her husband. She claims that in January 1973, she agreed to advance funds to her husband for their living expenses and that he would repay her expenditures. She is claiming repayment of $143,457.53. Theodore Kartes denies making such an agreement to reimburse his wife for their joint living expenses.

Theodore Kartes does admit that he entered into a limited agreement to repay his wife for money she advanced him for living and ranch expenses. He claims that the full amount of the money advanced by his wife is evidenced by three promissory notes amounting to approximately $4,800. Laura Kartes claims, however, that the chattel mortgage executed at the same time as the notes, indicates that her husband owed her a total of $20,123, and that the promissory notes were only a part of the obligation owed to her.

At trial, Laura Kartes submitted voluminous accountings of her expenses since 1973, including all of her living expenses, some of her business expenses, and some expenses for the support of her son. She admitted at the trial that some of the calculations were in error and that some of the expenses should not have been included in the accountings.

On April 10, 1980, a trial was held without a jury.

-3-

The District Court held that the written agreement for 10% of Theodore Kartes' ranch and the oral agreement for an additional 10% were enforceable against Theodore Kartes. The District Court ordered that Theodore Kartes pay Laura Kartes 20% of the value of the ranch and that the value be determined at the time he elected to pay her and based upon 20% of the value of the whole ranch. The District Court dismissed all of Laura Kartes' claims relating to the oral agreement for living expenses and found that the promissory notes from Theodore Kartes to Laura Kartes had been repaid in full. Both parties appeal. Under Rule 29(d), M.R.Civ.P., the parties agree that Laura Kartes is the appellant and Theodore Kartes is the respondent.

We affirm the District Court's holding that Theodore Kartes owes Laura Kartes 20% of his land and affirm the dismissal of Laura Kartes' claim for living expenses. We reverse the District Court's interpretation of the enforceable contracts to the extent that Theodore Kartes must pay 20% of the value of his land as a whole. We recognize that Theordore Kartes has the option to transfer whichever acreage he chooses, or the value thereof determined at the time of transfer.

Essentially three issues have been raised by the parties:

1. Whether the District Court erred in its interpretation of the written agreement?

2. Whether there is substantial evidence to support the District Court's finding of an oral agreement for an additional 10% of Theodore Kartes' land; if so, is the agreement nevertheless barred by the statute of frauds?

-4-

3. Whether the District Court erred by dismissing all of Laura Kartes' claims for living expenses?

Respondent, Theodore Kartes, admits that under the written agreement he has an obligation to convey to appellant 10% of his ranch or the value thereof. He claims, however, that the District Court erred by ordering that he must convey 10% of the value of his land as a whole in an amount determined at the time he makes the transfer. Respondent contends that the second paragraph of the written agreement grants him the option to pay in money or land and grants him the sole discretion to choose which thirty-two acres to transfer.

This contention of respondent is well-taken. The second paragraph of the written agreement provides:

> ". . . Description as to what metes and bounds to be established will be done by Ted C. Kartes or money to be paid in hand to Laura May Brunton by Mortgage to Federal Land Bank in the amount so stated above." (Emphasis supplied.)

The District Court itself observed at trial that respondent had the option to select thirty-two acres wherever he wanted. Appellant has admitted that there was no question about respondent's right to choose what land to convey. Nevertheless, the District Court awarded damages to appellant in an amount of 10% of the property taken as a whole.

As this Court has held many times, where the language of a written contract is clear and unambiguous, there is nothing to construe; the duty of the court is simply to apply the language as written to the facts of the case. Danielson v. Danielson (1977), 172 Mont. 55, 560 P.2d 893, 894, and cases cited therein. See section 1-4-101, MCA.

Further, if an express contract has been entered into by the parties, the District Court cannot alter the terms of the express agreement. See McNulty v. Bewley Corporation (1979), ___ Mont. ___, 596 P.2d 474, 36 St.Rep. 1110, citing Keith v. Kottas (1946), 119 Mont. 98, 172 P.2d 306. Lastly, it is reversible error for the District Court to insert into a contract language not put there by the parties. Herrin v. Herrin (1979), ___ Mont. ___, 595 P.2d 1152, 36 St.Rep. 193.

Here, the written agreement is clear that respondent has the option to choose which property to convey. The District Court may not disregard this explicit language of the contract by ordering respondent to convey 10% of the value of his land as a whole.

Respondent also claims that the intention of the parties was that the land would be valued at the time of the execution of the agreement in 1974. Since no contract language addresses this question, it was the duty of the court to discern the intention of the parties from their testimony. The District Court chose to believe appellant that the parties intended to value the property at the time of respondent's performance. The credibility of the witnesses and the weight to be given their testimony are matters exclusively within the province of the District Court in a nonjury case. Harris v. Harris (1980), ___ Mont. ___, 616 P.2d 1099, 1102, 37 St.Rep. 1696, 1699.

We must therefore uphold the District Court's interpretation of the contract that the value of the land is to be determined at the time of respondent's performance. On the grounds stated above, however, we must reverse the

District Court's order to the extent it requires respondent to pay 10% of the value of the land taken as a whole, and we recognize respondent's right under the written agreement to transfer any thirty-two acres of his land or value thereof.

In the second issue, respondent contends that there is not substantial evidence to support the District Court's finding of an oral agreement for an additional 10% of respondent's land. Even assuming that such an agreement existed, respondent claims that it is barred by the statute of frauds and is against public policy.

As mentioned earlier, the credibility of witnesses and weight of evidence are matters for determination by the District Court in a nonjury case. The rules governing claims of insufficient evidence are well-established. These rules were set down recently in Harris where we addressed a claim similar to that of respondent:

> "It is the petitioner's position that there is insufficient evidence to support a finding that an oral agreement existed between the parties. In the resolution of this issue, we are guided by a number of well-established principles adhered to by this Court. The credibility of witnesses and the weight to be given their testimony are matters which are exclusively the province of the District Court in a nonjury case. Corscadden v. Kenney (1977), 175 Mont. 98, 572 P.2d 1234. In examining the sufficiency of the evidence we review the same in a light most favorable to the prevailing party, and we further presume the findings of fact and conclusions of law of the District Court to be correct. Rock Springs Corp. v. Pierre (1980), ___ Mont. ___, 615 P.2d 206, 37 St.Rep. 1378, 1384. Only if our review discloses a decided preponderance of evidence contrary to the findings and conclusions of the District Court, will we disturb the judgment of the District Court. Morgan and Oswood Const. Co. v. Big Sky of Montana (1976), 171 Mont. 268, 275, 557 P.2d 1017, 1021." 616 P.2d at 1102. (Emphasis supplied.)

The record does not disclose a preponderance of the

evidence contrary to the District Court's finding that the oral agreement for an additional 10% of respondent's land existed. The District Court's finding must therefore stand.

Respondent contends also that even if one assumes that the parties made such an oral agreement, it is barred by the statute of frauds, as provided in section 28-2-903, MCA. He claims that it is an agreement which by its terms cannot be performed within one year (section 28-2-903(a), MCA), and is an agreement for the sale of real property (section 28-2-903(d), MCA). The District Court accepted appellant's position that the statute of frauds does not bar the oral agreement because appellant fully performed her part of the bargain. See section 30-11-111, MCA.

Respondent testified that he believed the written agreement for 10% of his land was to cover the costs of appeal as well as costs at the District Court level. According to respondent, then, appellant's payment of the costs on appeal can be reasonably explained on these grounds as her performance of the written agreement.

The District Court did not find that the written agreement covered legal costs for appeal. The record does not disclose any evidence other than respondent's testimony to support his contention. Since the District Court is in the best position to view witness testimony and decide credibility, and since the record does not disclose a preponderance of the evidence contrary to its findings, respondent's contentions of error here lack merit.

Since the District Court found that the oral agreement for an additional 10% of Theodore Kartes' land contained the same terms as the written agreement, and there

is evidence to support this finding, Theodore Kartes must select another thirty-two acres to transfer to his wife or pay the equivalent value determined at the time of payment.

In the last issue, appellant contends that the District Court erred by dismissing all of her claims for living expenses.

The District Court found that the promissory notes given by respondent to appellant for his ranch and living expenses had been paid and that any expenses accruing prior to April 25, 1973, were barred by the five-year statute of limitations as provided in section 27-2-202(2), MCA. The District Court concluded as a matter of law that all of the evidence submitted by appellant under her claim for living expenses was "speculative, unclear, filled with errors in calculations [and] filled with many items admitted on cross-examination as being improperly included," and the evidence therefore should be disallowed in its entirety.

Appellant cannot expect to, in essence, have all her accounts at the court and transfer the burden of proof to the respondent to prove what evidence is not entitled to be admitted. The general accepted procedure is for the moving party to lay a foundation for each acceptable account and then have the adverse party proceed with its challenge, if any. The District Court's disallowance of appellant's evidence for living expenses was proper.

Appellant argues that because there was no substantial evidence challenging a majority of her living expenses, a simple challenge to some should not prevent recovery on the balance of proper evidence. Appellant has twisted the meaning of the substantial evidence rule. The

rule means only that an appellate court will not disturb the trial court's conclusions if there is substantial evidence on the record to support its findings. See Barrett v. Ballard (1980), ___ Mont. ___, 622 P.2d 180, 185, 37 St.Rep. 2038, 2042-2043.

Therefore, the judgment of the District Court is affirmed in the following matters: (1) respondent owes appellant 10% of his 320 acres under the written agreement between the parties; (2) respondent owes appellant an additional 10% of his 320 acres as provided in the oral agreement between them; and (3) appellant's claims for living expenses are dismissed.

The judgment of the District Court is reversed wherein it requires respondent pay 20% of the value of his land as a whole. Respondent may choose which sixty-four acres to convey, or he may pay the value of those sixty-four acres as determined at the time of payment.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-